Let's take up the next case, Senate 9, which is Vaughn v. AmeriGas Propane. Please proceed. Good morning, Your Honors. May it please the Court, Counsel. My name is Dan Hassestad. I represent Companion Property Cash at the insurance company. We are the appellant, of course, in this case. And this case involves really the propriety of a sanction order issued by the trial judge, Judge Lopinel, regarding our refusal to provide what we believe, strongly believe, to be confidential information in our claim file notes that we've been ordered to produce. And I think what's important in this case is the procedural history. And I think there's been two competing versions based on the briefs that were filed as to what actually happened in the underlying case to get us here today. What happened was there was a workers' compensation case filed. My client is the workers' compensation carrier for material resources, the employer of these two individuals who were injured in a tragic accident. In the original cases, there were two cases filed that consolidated. And in that case, a defendant by the name of Worthington, who is no longer a party, issued a subpoena to my client for a long list of items, including the entire claim file for the workers' compensation case. In response to that subpoena, we produced the claim file, but we redacted those portions which we believe, continue to believe, were protected under the attorney-client privilege, the insurer-assured privilege, the work-product privilege, and also the consultant information, too, that we redacted. A motion to compel was filed in that original case by Worthington, and the judge entered an order finding that there had been a flagging of this. Oh, I'm sorry. Let me back up just a little bit. We provided a full copy of the claim file notes to Judge Locono for his in-camera review, as well as a privilege log of those, listing those items we believe to be privileged. His conclusion was that we had not established that there was a, that these items were protected by either the attorney-client privilege or the work-product privilege. He did not go into the consultant privilege. His order is very brief, basically saying that we didn't establish that they were protected. We have to produce the whole thing. Subsequent to that, the companion filed a motion to reconsider that order. And in conjunction with that motion to reconsider, filed an affidavit of Michael Downs, a claim supervisor and associate companion, in which he identified the specific people named in these log notes, who they were, the attorneys that were involved. To present to the judge, these attorneys were hired. One attorney was hired specifically to defend the work-con claim. Another one was hired to protect the companion's interests, subrogation interests, with regards to the work-con claim. Identified who these communications were being made to and submitted that along, again, with the redacted claim file notes. Now, before, and this is where there's some confusion, I believe, when you read the two briefs. That motion was never heard by the court. The plaintiffs, you know, without any involvement in the opinion whatsoever, voluntarily dismissed that action before the motion to reconsider could be heard. Now, my opponent will, it seems as trying to lead the court to believe that there was actually an order issued on that motion to reconsider. There was no order ever issued on the motion to reconsider. There were some comments made by the trial judge at the hearing on the voluntary dismissal saying that, well, I'm going to follow any order that I made previously when this case gets refiled. How he knew he would be reassigned the case when it got refiled, I'm not sure. But he did make that comment. But in the order itself, there was nothing in the order saying I'm going to hold anybody to any particular order that was filed or that was entered in the previous litigation. And I've cited some cases along my brief that, you know, once a case is voluntarily dismissed, that ends that litigation in its entirety. When a motion is, when that, and when a case is refiled within the one-year saving statute, that starts an entirely new action. The Supreme Court has concluded that. It's not a continuation of the prior litigation. And I think that's where some of the confusion came in with regard to. I thought there was just a recent decision on that. Which? On restarting. It was based on a, not for cause, but getting rid of the trial judge. Oh, is that the one involving the substitution of judge? Right. That's the latest I thought on that.  I'm familiar with that opinion, Your Honor. But I think that opinion was limited, if I recall, to that particular issue, to whether a substitution of judge. Right. Whether someone, after a case is refiled, could take a substitution. But I thought they spoke in there that it was a continuation. That it wasn't. More was a continuation of the same case. I don't have that, you know. I didn't know if you cited it or not. I haven't cited it. Then we won't worry about it. Okay. If that's what it is, that's not what I recall involving, to be honest with you, Your Honor. I could submit something in a brief if necessary. But I cited a Supreme Court case. And my brief clearly said that once the case is voluntarily dismissed. Well, if you do want to cite it, then you would cite it and you would get ten days to respond. Okay. See if you do. All right. And the opponent has put or has construed basically the dismissal order as a conditional order. That the judge made some kind of conditional order based on his comments during the hearing. Now that, whatever conditions. First of all, that factually is incorrect. You didn't put any conditions in the dismissal order saying that anything was going to continue over. You just made some comments on the record. And even if you had, even if those could be construed as being conditional, that this dismissal was conditional on certain things being carried over. I believe that he did not have the authority to do that. Under, as far, under the rules of voluntary dismissal, the only conditions that a trial court has the discretion to put on a voluntary dismissal is the payment of costs by the person seeking the dismissal. Or if the court found that the movement, the person who dismissed in this case, in this case was not companion, was doing it to avoid discovery deadlines or discovery orders. Then they could put, they could put certain conditions on it. If it gets refiled, they have, are not officially filed. But they have to pay certain costs, insurance fees, expenses, and so forth. But aside from that, there's nothing in the statute or in the Supreme Court rules that would allow a trial judge to make a voluntary dismissal conditional on anything else. Now, like I said before, in this case, factually, it didn't happen. He didn't say, well, I'm going to condition this dismissal only on, you know, if companion, you know, submits the entire claim file. I was curious in reading the briefs. Did the trial court look at, well, this was filed against with the third party complaint on the exfoliation claim. And did the trial court look at, well, Amerigas should be able to look at part of this, but maybe the plaintiffs, the underlying plaintiffs should not. Did they, did the court look at that and try to distinguish, Amerigas can look at it, but Vaughn and the other plaintiff on the pursuant to your claim cannot? And do you think that makes a difference, or could the court have done that? I don't think, I think it would be a better way to do it if they had. But I still don't think the judge had the discretion to do that, because privilege is a privilege. Whether, you know, I do believe that, you know, since these are workers' compensation claim notes, that they would, you know, essentially benefit the plaintiff more so actually than the person, the party seeking the notes. Because, you know, then you're going to expose companion to showing what it's, basically what its litigation strategy was with regards to this workers' compensation claim. And that's, I mean, if you look at the unredacted notes that I submitted for the camera review, I mean, it's replete with comments by the attorneys. Okay, this is what we need to do. This is what we believe the value of the case is. I mean, this is, you know, poor attorney work product and attorney claim privilege information, which, you know, I guess, you know, if, you know, push comes to shove, he wanted to disclose it to let America see it, to show that there's nothing in there, you know, to help the spoliation case and keep it away from the plaintiff. I mean, that's a route he possibly could have taken. It's not a route that he chose to take. He chose to just do, you know, blanketly say this is all, you know, out in the open. You have to produce this, you know, to everybody. I mean, once, you know, under the Supreme Court rules, once, you know, if you commit, if you have paid something by subpoena, you know, you have to disclose it to the other parties involved unless there's an order saying otherwise. So the way that the trial judge, you know, disposed of this case was basically saying, Commander, you have to show, you have to open your file to everybody. Mayor Gass and to the plaintiffs themselves, the people who would have the most benefit, you know, from a strategic standpoint to know what their adversary, you know, was planning to do with regards to this workers' compensation file. So our position is, you know, that once that first case was dismissed, that was it. A companion had no duty to do anything after that. The motion became moved. Worthington was dismissed from the case. Worthington issued that first subpoena. But Mayor Gass did not. Now, when the case gets refiled, even at that point, there's, Companion's not, Companion wasn't initially even named a defendant in the second case. They had no obligation to do anything until the Mayor, Mayor Gass restarted the process by issuing a subpoena. They have Mayor Gass not issue that subpoena. Companion had no obligation to disclose anything. As I stated before, the orders, the interlocutory orders from the dismissed action do not carry over per Supreme Court rules to the second litigation. So we started anew here with the second litigation. Subpoenas issued to my client, substantially similar to the one from Worthington, and they specifically asked for those documents, for the plaintiff's file notes, et cetera. And in response, we filed a, what we classify as a motion for protective order. We, again, submit the plaintiff's file notes for redactions. We ask the court to issue protective orders stating that we do not, you know, that these particular, these particular materials that we redacted are protected from disclosure. But we also, we also phrased that motion as a motion to reconsider because the judge had made the comment, like I said, by happenstance, I suppose by happenstance, it was reassigned to the same judge the second time around. The judge had made the comment the first time around that he was going to hold everybody to the orders that he made the first time. So as an alternative, really, they said, you know, we want a protective order, but we also want you to reconsider, you know, what you said before. Now, at that point, and this was, you know, we responded promptly to the subpoena. At that point, the trial judge had before him the affidavit from Michael Downs, which stated, you know, establish the elements of the insurer-insured privilege with regards to communications with material resources. Establish the elements of the attorney-client privilege with regards to companion's communications with its subrogation counsel and with the workers' defense counsel. And the judge, we had a hearing on that. It was a very brief hearing. The judge said he would look at everything. A few days later, he entered a five-word order that basically said motion to reconsider is denied. He didn't explain, you know, did he not think that he had to, you know, look at the affidavit? Did he even consider the affidavit? It's unclear from the order. You know, it's our position that since this was a new case, he had to consider the affidavit in conjunction with the in-camera review and with the redacted materials of the privilege log in reaching his decision. Now, if he did do that. Let me ask you this question, counsel. Yes. If we adopt your argument about the new case being a new case and the carryover from the old case on the discovery does not apply, the motion to discovery is denied, where is the case procedurally? Excuse me? Where would the case be then procedurally? If the motion is denied. If there really was no motion to consider on the table and he says motion to consider is denied, where does that put the case? Well, I mean, I'm trying to understand. If the subpoena had been issued and we, I would suspect that they would file a motion to compel as Worthington did in the first case and we would kind of be where we are there. The exception being at this time we have an affidavit from Michael Downs, which was the, you know, which was the court did not have initially when it made its ruling. But now, in the second case, there's, you know, it has the affidavit, it has the unredacted notes, it has the redacted notes, it has the privilege log, it has all the information. So the difference is in the new case you have the affidavit that sets forth privileges. That's correct. Now, technically the affidavit was submitted in the motion to consider in the first case, but that was not ruled upon. That was still pending at the time it was dismissed. So what difference does the motion to reconsider and the procedural issues from the first case to the second case, what difference does that actually matter? Does it make a difference? It matters. I believe it matters because what my opponent is arguing is that basically we have to freeze this case. We have to look at the first case and consider what the judge had before him the first time when he made the motion, when he was considering the motion to compel a file by Worthington. And in that case, the affidavit was not before him. And what my opponent was arguing was, well, you guys blew it there. You didn't have the affidavit in front of you, and it's too late to bring the affidavit in on the motion to reconsider. The judge doesn't have to review the affidavit because you could have brought it the first time. So if this is one continuation, then I think it's easier. I don't think it's dispositive by any means, but I think it's easier for my opponent to say that this was, you know, it's an abusive discretion standard. I guess that's basically what I'm getting at is what is the standard? And I think proceed, by the way, proceed is since we, and, you know, aside of the Smith versus Pace case also, it says the appellate review is limited to, you know, to the orders of this case. Now, I do concede that the trial judge could, you know, he has the discretion to consider orders in the first case, but under rule 219. But rule 219 also requires that if he's going to base a sanctions order on stuff that happened previously, he has to specifically state that in the order. And he did not. The basis of the sanction order that we're on appeal today is the failure to comply with this order from January 2015, which all it said was motion to consider is denied. Well, is this then a de novo review of a legal privilege question, or is this an abuse of discretion discovery question? I believe this is a de novo review, and this is why, Your Honor. I believe the review should be limited to what occurred in the second case. In the second case, we're reviewing here basically the motion for, the promotion for the protective order that companion filed in relation to his claim filed notes. And in conjunction with that motion, it submitted the affidavit, which was uncontested. It submitted all of the notes that were issued during camera review. There are several cases, which I cite in my brief, that says a trial court does not have discretion to compel the production of privileged materials. And there was no factual dispute as to whether somebody, you know, there was no factual dispute as to whether Michael Pound set forth his affidavit. So there's really nothing, there was no room for discretion with the trial court with regards to what he was to consider with regards to that motion for protective order. All the facts were contested, the materials were there, the law was there. And he chose basically to say motion to reconsider is denied without any type of analysis really as to, you know, did he believe that it was too late that the Michael Pound, he wasn't even going to consider the Michael Pound's affidavit and just, you know, find that it was too late to submit it? Or did he actually consider the Michael Pound's affidavit and even in light of that, still believe that this, you know, none of this stuff was privileged? Which I find fairly hard to believe because if you can look at, you know, if you look at the materials, some of the stuff even with an affidavit seems clearly privileged. I mean there's entries in there that says we've consulted with our attorney and she recommends this. I mean that's the textbook definition of work product. The attorney is telling you, is basically setting forth what her litigation strategy is with regards to this workers' compensation claim. So when you add the affidavit from Michael Downs, it becomes even more clear because he's, you know, like I said, he identifies who these people are. Thank you, Counselor. Thank you. You'll have a chance to revote. All right, thank you. Argument for the appellate. May it please the Court, Counsel, James Holtquist on behalf of the appellate, Amerigas Propane. Your Honor, the issues here before this Court were before the trial court on four separate occasions over the course of three years. There were two motions to compel, two motions for reconsideration, and our motion for rule to show cause that ultimately led to the contempt order for failing to comply. Each time, the matters were fully briefed, there was oral argument, the Court conducted an in-camera review, and each time the Court found that companion group had failed to meet its burden to establish the privileged nature of these communications. Counsel and companion group throughout their brief and now their oral argument seem to suggest that it is the trial court's job and now this court's job, because you all have the documents, to do a first pass and to make a determination of whether or not a privilege should attach to these documents or the communications within the documents. That is not the law. Companion group was required to provide a privilege law, a privilege law that on its face arguably presented why these communications were privileged. If you go back to the privilege law that was submitted, and I submit that it was hardly a privilege law, in connection with the trial court's March 2014 order, you'll find that in Essay 4 of our appendix, is essentially a letter. The letter that lists a number of documents, the date of those documents, and then provides either attorney-client privilege, work product, or invoice from a consultant. Those are the descriptions. That's what was presented on the face. With that privilege law, the documents were also submitted to the trial court. Again, with the suggestion that the trial court was supposed to do what I might consider to be first year associate work to go through and do a first pass to determine whether or not these documents were in fact privileged. The trial court was not required to do that. The trial court did do an in-camera review. The trial court came back and made a determination, as it should, finding that Companion Group had failed to meet its burden to show that these documents were privileged. The motion for reconsideration, which in the alternative was a motion for reconsideration, was filed. At the same time, Amerigas filed a motion to compel. That was in the first case. The order was entered in March. Subsequently, Companion Group files their motion for reconsideration. Within a day, Amerigas might have filed their motion to compel first on April 14th, and Companion Group filed their motion to reconsider on the next day or might have been vice versa. In any event, both of those had been filed prior to the plaintiff moving to voluntarily dismiss the case. At the hearing on the motion to voluntarily dismiss, Amerigas' counsel requested that his honor enter that the documents be produced. On the transcript, it's part of this court's record. Judge Levinow said, no, I'm not going to do that, but made it very clear that if and when this case is going to be refiled, Companion Group is going to have to produce those documents if they haven't met their burden. Would you address my question that I asked counsel about the procedural differences between the two cases and whether it makes a difference on the refiled case or not? It does, Your Honor, and here's why. In connection with, in the first case, in connection with their motion for reconsideration that was filed, Companion Group's motion for reconsideration, as counsel has accurately indicated, Companion Group filed a second privilege law in what's considered this Downs affidavit. The Downs affidavit they portrayed sets forth reasons why these documents or the communications ought to be privileged. After the case was filed, in what now I understand to be before this court, is consideration of a third privilege law. When Amerigas, when the refiled case was filed, Amerigas had submitted the, served the affidavit and then moved to compel the production of documents. It was after the refiling of the case that Companion Group, as counsel has indicated, filed a motion for a protective order in the, or in the alternative, a motion to reconsider the order that was entered in the prior case. With that motion, Companion Group submitted what is the third privilege law. Now, granted, the second privilege law and the third privilege law didn't provide any new information. That is any information that wasn't available to Companion Group when the first privilege law was, was submitted. And it's our position that, as we all know, on a motion for reconsideration, it's not an opportunity for a party to lose a motion, go back and gather evidence that was already available at the time you lost the motion and submit it to the court to try to convince the court that you made the wrong ruling. So that essentially is what happened. But in any event, after the case was refiled and the third privilege law was submitted, the Dow's affidavit was not submitted in that new case. The Dow's affidavit was submitted with the second privilege law in the first case. So what you've got here is Companion Group wanting their cake and eating it too. They want to say, no, this is a second case, and it's a whole new filing. But yet they want to rely on the Dow's affidavit that was made part of the record in the first case. And they just can't have it both ways. I hope that answers your question. Would you address my question about the standard of review? Yes, Your Honor. As far as whether this is a discretionary abuse of discretion case on discovery or de novo review of the law on privileges? Yes, Your Honor. It is our position that this proper standard is an abuse of discretion. Again, what the Companion Group is is challenging the subsequent motions for reconsideration and the order holding it in contempt. If that is the case, then those follow an abuse of discretion standard. If the court goes back to the original filing of the trial court and finds that it is a de novo review because it really at its heart is a question of privilege, to be candid with you, Your Honor, it doesn't really matter to me. I believe it's an abuse of discretion. But under either standard, as we set out in our brief, Companion Group has not met its burden. It didn't meet its burden below, and the record reflects that it cannot meet its burden on the current record before this court. And there are a number of reasons for that. As I've said, there's a disconnect between the third privilege law before this court and the Downs affidavit. But even if you can tie those together, or even if Companion Group wants to say, no, it was the second privilege law that was submitted in the first case with the Downs affidavit. That's really what we ought to be talking about here. They haven't met their burden. And there are a number of reasons why. If you look at the Downs affidavit in conjunction with any of the entries that are set forth on those privilege laws, they don't meet their burden. There are a number of different kinds of communications that are at issue in this case. And there are really three different privileges. Obviously, the attorney-client privilege. There's the work product doctrine. And there's the insurer-insured communication, which is really an extension of the attorney-client privilege. So the insurer-insured communication has to be either expressly for the purpose of getting or receiving legal advice, or with a reasonable expectation that that was the purpose for the communication. Another question on that subject. When you file a cause of action for a spoliation claim, is there any law that says that in any way affects privileges? I don't believe you've cited too many. Are you aware of any law that changes the privileges just because you file a spoliation claim? There is one. I believe that we've cited a case in our brief, Your Honor, that says you can't hide behind a claim of privilege to hide spoliation. I understand that that's not directly responsive to your question. I believe the answer is there has to be an underlying privilege in order to preclude your opponent from getting that communication, regardless of whether or not it relates to spoliation or not. The issue that's pertinent in this case is that because there are the communications between an insurer and an insured, although an extension of the attorney-client privilege also requires an additional component, and that is that there be a duty to defend on behalf of the insurer. Here, there are spoliation claims that have been brought by Amerigas and others against Material Resources and Companion Group. Companion Group has denied coverage for the spoliation claims and has denied its duty to defend. And so there cannot be any insurer-insured communication and, indeed, no attorney-client privilege that would protect the communications that relate to either the preservation of evidence or the destruction of that evidence. So while there may not be a case directly on point, clearly they cannot take the position that there are privileged communications related to those issues before this Court. Now, I will take a step back. In the brief, Companion Group kind of takes Amerigas to task for somehow suggesting that Companion Group or its counsel did something wrong or intentionally withheld evidence. Your Honor, I am not making that claim. I want the record to be clear. There is no evidence that counsel has done anything wrong, and I don't want my brief to be read that way. What we are saying, though, is that because we haven't seen the documents, it's difficult for us to determine whether or not there is evidence within those withheld communications that relate to the spoliation of claims. And because there isn't an insurer-insured relationship as it relates to those claims, we're entitled to see those communications. Counsel, let me follow up on my question as well, which I can see where you would want to see the claim file on your spoliation claim. You'd want to see that claim file both before any suit was filed and after the suit was filed. And there may be things in that claim file that would – that go – we ought to settle with the plaintiff's bond for this amount or whatever. Was that – was the trial court ever asked, okay, Amerigas, on your claim for negligent spoliation of evidence, you can see this, but it's limited to you seeing this? Or I guess your position is, well, the trial judge took a look at everything, said, let them have it, and that was not an abuse of discretion. It was not. Your Honor, a couple things. We, frankly, agreed with the trial court that they had not met their burden of establishing that these were privileged communications. And so the trial court had ordered as far back as March of 2014, we're entitled to see the documents. And so there really was no – the case was not in a posture, I guess, for – at least for Amerigas to suggest that there should be something other than full disclosure of the documents, because that was the order that was rendered. And the judge consistently, after multiple oral arguments and motions for reconsideration, maintained that position. It is interesting, I think, and very important for Your Honors to recognize that it was not until the reply brief before this court that Companion Group raised this notion, that it should not be bound by the court's order in the prior case. Going back to March of 2014 when the court entered that order, Companion Group was there. They were there when Amerigas said, Your Honor, please order these documents to be produced. And I would agree with counsel. It wasn't – there was no technical condition that's set by the judge. The order doesn't set forth a condition of production. But the record is very clear. The judge said, if and when this case is refiled, and he said, and I believe it will be, those documents will be produced. Not a peep out of Companion Group in that hearing to say, Your Honor, that's not right. No one's going to be bound by this order in the prior case. And, in fact, Rule 219 doesn't say that a trial judge is only bound by the orders in the case that have the number in which he's currently presiding. I think it's an improper position for them to take that Judge Libouhel, who had done all the work, who had done the in-camera inspection, who, yes, got the case – the case was reassigned, and had made it clear that those documents – that his order was going to stand up. Why would he not, both as a legal and as a practical matter, move forward on the grounds that he had made clear to everybody on the record he was going to do? After the case was refiled, and Companion Group files their motion for a protective order, as counsel said, they even styled it in the alternative as a motion for reconsideration. Reconsideration of what? The order that was entered in the prior case. And so even after the case was refiled, they acknowledged that, yes, Judge, we want to argue about whether or not your ruling in the prior case was correct. They didn't say at that point, you have no grounds to hold us to an order in the prior case. Again, it wasn't until the reply brief before this Court that that notion was even brought up. There are a number of reasons why, even under a de novo review, Your Honor, the Companion Group has failed to set forth adequately the privilege that – the privilege that it wants to stand behind. There are a number of entries in their – in the claim file and also on their privilege log, really, even whether you look at number two or number three, where there's just a reflect of communications with Companion. You know, there's no identity. One of the communicators is not even identified. Certainly difficult to determine how a privilege could attach when we don't even have the identity of a communicator. Other entries are made to appear on the privilege log as if it was simply because there was a lawyer involved in the communication, that those are privileged. And again, we all know it has to be for the express purpose of seeking or receiving confidential legal advice. And there's nothing in a number of these entries, and we've set it forth in our brief, to indicate to the trial court or to Your Honors that it was for the purpose of seeking or receiving legal advice. Many of the communications are with adjusters. These adjusters for Companion Group, some of them are identified in the Downs affidavit. Now, again, I don't think that Your Honors, if you're going to look at the third privilege log, can even consider the Downs affidavit if, in fact, we're going to say the first case doesn't apply because the Downs affidavit was submitted in the first case. But let's assume that we're going to tie those together and we're going to consider the Downs affidavit. The Downs affidavit doesn't set forth that these adjusters were members of the control group, which is required under Illinois law in order for communications with them to be privileged. The control group, obviously, is management or making strategic decisions in connection with the litigation or those people upon whom management decides or relies, excuse me, when making strategic decisions in connection with the litigation. The Downs affidavit suggests that they had litigation decision-making responsibility. Not sure what that means. You know, we could go from all the way from deciding whether or not to dismiss the case or prosecute it to making copies of pleadings. It doesn't spell out where the decision-making authority falls. A number of other communications are with a gentleman named Colleen Medley. Mr. Medley has been identified as a general manager of material resources, the insurer. Again, there's no indication of what authority Mr. Medley had. Nothing in the affidavit, nowhere in the record does it suggest that Mr. Medley had any sort of decision-making strategic responsibility for any litigation. Again, Mr. Medley, there's no evidence that Mr. Medley was a member of the control group. And certainly, we all know that simply because there's a communication with someone called a general manager doesn't make that a privilege. It is the burden of the control group to establish the privilege. They didn't do it. Those communications should be produced. There is certainly no authority cited therein that I'm aware of that somebody that has the title of general manager that somehow by title alone entitles that communication to be privileged. Many of the entries on the privilege log are claimed to be this insured, insurer privilege. But again, if you look at the privilege log, there's nothing to indicate that those are for the purpose of getting or receiving legal advice. And certainly, adjuster's work or communications in the ordinary course of the processing of claims is not a privileged communication. Some entries on the privilege log identify individuals or don't fail to identify individuals. We don't know who they are. They're not down to affidavit. There's no indication on the record of who these people are. Certainly, those cannot be privileged. Your Honor, we believe that Judge Lipino gave companion groups sufficient opportunity to meet its burden time and time again. And when you look at this record and what was submitted to the trial court and now to Your Honors, it is not for Your Honors to go through the documents to determine in the first instance whether or not there's a privilege to the attachments. They failed to meet their burden. And as a result of that, Judge Lipino, on multiple occasions, ordered them to produce these documents. They failed to do that, and he rightfully issued the contempt order.  Thank you. Thank you, Counsel. Revital argument? Yes, Your Honor. I'd just like to respond to a couple things my opponent said. First of all, he seems to suggest that the trial court's job is not to determine, to go through these notes and determine what was privileged and what was not. I mean, that's exactly what the judge's responsibility was. When he took a look at the documents in camera, it was determined based on the evidence before him whether these were privileged, you know, they fell under the privilege or not. I mean, that's why we have these camera inspections. That's the whole purpose of that, to suggest that it's not the judge's job to do that is kind of confusing to me. And he made a comment towards the end of his argument that Judge Lipino gave companion time and time again opportunities to, you know, to prove the privileges. It kind of contradicts his argument that we should only be looking at what happened the first time, in the first case, before the Downs affidavit was submitted. After the Downs affidavit. Can you clarify that? Because I thought he just said that that was submitted in the first case. It was submitted in conjunction with the motion to reconsider. The original motion to compel that the judge ruled upon said that you have to submit the unredacted copies. The Downs affidavit was not before him. When we filed the motion to reconsider, we filed the Downs affidavit with that. Again, that motion was never taken up. The case gets refiled. The process starts over. At that point, the judge has the Downs affidavit. He has everything. You know, he's basically— So was it refiled in the new case? Yes. The Downs affidavit and the privilege law. Everything was before the judge in the second case. And that's, you know, as I said in my primary argument, that's where the focus should be, is what was before him. And at that point, he had the information. So to say that he gave us another—gave him an opportunity to prove it, we can't tell from the order. All he says is motion to reconsider is denied. We don't know if he said, you know, if he said, well, I may be considering the Downs affidavit because you should have submitted it the first time around. Or he said, well, I've looked at the Downs affidavit now, and I still think you haven't proved your case. So we don't know. You know, and our position is that he had to look at the Downs affidavit. He had an obligation to. I mean, that was submitted along with our motion. And, you know, apparently—I guess it's unfortunate that we labeled it motion for protective order and in, you know, in the alternative motion of reconsideration because plaintiffs are—my opponent seems to think that because we labeled it motion of reconsideration, all of a sudden an abuse of discretion standard comes in. But the reason we put that in there was really to cover ourselves because the judge had made the comment that, you know, about the early orders. And actually the subpoena itself references that order. The subpoena says—from Marigas says produce all the documents that you were ordered to produce in this case. So it was just natural for us to say, well, we want you to reconsider that order as well. But really what it was—I mean, from a procedural standpoint, it was a motion for protective order under Rule 201 saying that we don't have to. And that was filed with the affidavit, with the redacted notes, with the privilege log, with everything else. And at that point, the judge had the obligation to review everything. We don't even know if he even considered the Downs affidavit. And at that point, you know, since the privilege was that issue, it's a de novo review. There's no factual determination that the judge had to make with regards to that. It wasn't, you know, a motion to reconsider in the traditional sense that we were asking him to re-examine something he did before. And that, you know, even my opponent suggested that the judge gave us additional opportunity to approve it. We don't know if he did or not. We don't know if he was just sticking by his order and said, I don't care what you submit after that. I'm going to stick by order, and I don't even care what you do. We don't know because he didn't put it in the order. And that's the problem here. You know, under Rule 219c, before you can even, you know, impose sanctions, you have to explain why you're imposing sanctions. And the only thing that you put in the written order was that we did not comply with this motion to reconsider the denial, which technically doesn't obligate us to do anything. And one more thing. Well, first of all, the spoliation exception, the short answer is no, there is no spoliation exception to the attorney-client privilege. There's no authority that says that. There's no authority that's supposed to sustain that. In fact, there's no authority that says that there is no undue hardship to the attorney-client privilege, or no hardship exception, I'm sorry. And I think counsel said that my reply brief was the only time that I mentioned this dichotomy, I guess, between the first case and the second case. I refer the court to my primary brief, page 34 to 35, where I specifically state that the case was terminated and it was started a second case. Thank you, counsel, and thank you for your briefs, for argument. We'll take this case under advisement. We're going to take a short recess, and when we come back, we'll pick up the 10 o'clock case. This court will be in recess. All rise.